Morning, Your Honors. May it please the Court, Julie McGrane on behalf of Appellant Richard Banks. With the Court's permission, I'd like to reserve three minutes for rebuttal. Granted. Thank you. The issue before this Court is whether or not the District Court abused its discretion in running Mr. Banks' sentence on his violation of supervisory lease consecutive to an underlying sentence for a new bank fraud. But before we get to that issue, the Court needs to address whether or not the appellate waiver bars Mr. Banks' appeal. And the question is not whether it was knowingly involuntary. We concede that he knowingly involuntarily entered into this agreement and that he agreed as part of his waiver that he would not challenge the guideline sentence imposed on the conspiracy to commit bank fraud if it fell within or below the guideline range, and he would not challenge the sentence imposed on the violation of supervisory lease if it fell within or below the guidelines. Both those conditions were met, so we agree he can't challenge the length of those sentences. But what we argue is outside the scope of his waiver is the District Court's decision to impose the sentence on the violation of supervisory lease to run consecutively to the bank fraud conspiracy. Now, we've already written twice in not-presidential opinions adverse to your position, correct? That's correct, Your Honor. If we follow those cases, is that fatal to your position? I don't think so for two reasons. First, this case is distinguishable from every single opinion that I could find published on the issue of these waivers because it concerns two federal sentences negotiated in the same plea agreement. The two cases, Page and Wycock, that were decided by this Court, concerned federal sentences that were imposed consecutively to undischarged state terms of imprisonment. So it was a single plea agreement negotiated for the purposes of the federal offense. This involved a single prosecutor negotiating for two federal sentences that were going to be imposed on the same date and time concerning the same conduct. The violation was for committing the new crime of the underlying bank fraud conspiracy. So it's our position that the government certainly could have, it's our position that the parties were on notice that the possibility of a consecutive sentence existed. But all the plea agreement said with regard to that was that the Court may impose a consecutive sentence. It didn't say it had to and the Court certainly had the discretion. And the guidelines that cover this make it mandatory, do they not? They do not, Your Honor. In Swann, this Court held that the Court retains the discretion to impose a sentence even though there is a presumption in favor of consecutive sentences, the Court still retains the discretion to impose a concurrent or partially concurrent sentence. So the Court, and that's why the language of the plea agreement said that the Court may impose a consecutive sentence. There were no stipulations regarding whether or not the Court was going to impose a concurrent, consecutive sentence in this case. And at sentencing, Mr. Banks argued for a fully concurrent sentence. The government argued for a fully consecutive sentence. But again, unlike the stipulations in the plea agreement with which directly impacted what guideline range would apply, there was no mention at all as to the interaction of these two federal sentences that were negotiated within the same plea agreement. How do you explain away the may language, though, in the plea agreement? Well, because it says may, that implicitly means that the Court doesn't have to. And so therefore, it leaves open the question of what the Court is going to do. Had the government said, we are going to ask for a consecutive sentence, and Mr. Banks had agreed in a stipulation that he was going to reserve the right to argue that a consecutive sentence should not be imposed, then he might have been on notice that a consecutive sentence was likely, and he was waiving any right to appeal that. That's what happened in Page, where the defendant specifically reserved the right to argue for a concurrent sentence, knowing, being on notice that a consecutive sentence was likely to be imposed. Here, the government took no position, said it may be a consecutive sentence, but said nothing else about it. And so therefore, that renders the scope of this plea agreement ambiguous. There was nothing in the plea agreement that would indicate to the defendant that his appealing the consecutive nature of the sentence was out of bounds. And another question that is not addressed in either my or my opponent's brief, but which came up in one of the cases cited in the 28J letter that the government submitted, is whether or not the term sentence in this case, which says that the appellant may not appeal any sentence imposed that falls within or below the guideline ranges, whether or not that truly encompasses the imposition, the direction of the court to run the sentence consecutively. You're saying it just refers to the length of sentence? Well, yes, to the length of the sentence imposed on each, which he's not appealing. So in Goodson, which is cited in the 28J letter by the government, and the reason that I think this wasn't raised is because all the cases that decide it assume without deciding that sentence encompasses a court's decision to run a sentence concurrently or consecutively. But what Goodson says... Isn't that the ordinary? I'm sorry. I'm sorry, go ahead. You go, no, you go ahead. What Goodson says, and Goodson involved a challenge to special conditions of supervised release. And in that case, the defendant argued that the scope of his appellate waiver did not encompass his challenge to special conditions, because special conditions sentence should not be construed to mean anything other than a sentence of imprisonment. And the court said, no, that panel, this court said, no, that's not the case. Under Chapter 227 of the Federal Criminal Code, the period of incarceration is but one component of the sentence. Other components include probation, supervised release, fines, and restitution. Nowhere does it mention the manner in which the sentence is being imposed, which is concurrently or consecutively. However, the word that used in this waiver, any appeal in our Castro case decided earlier this year, slightly different facts. We pretty much came out and said that that word is to be interpreted expansively. How do you deal with that? Right. It says, the waiver says, file any appeal. Any appeal, challenging the sentence. Right. Which challenges the sentence imposed. Any appeal. Right. Which any appeal, which challenges the sentence imposed. I don't think that means any appeal of anything, because what this appeal waives is it waives. Then you, I'm missing part of your argument. And you're saying that the consecutive or concurrent nature is not a part of the sentence? Correct. Because the way that sentence is defined is, like the panel in Goodson said, the way that the term sentence is defined includes incarceration, supervised release, fines, restitution. But it mentions nothing about the sentence imposed. And. But, and your position is that it doesn't, the agreement doesn't contain some of the broad catch-all provisions that some other plea agreements have. Correct, Your Honor. So. But are they necessary? I mean, if, doesn't the word any mean any? Well, again, I think this is a unique situation. The government was in the position of bargaining power here, and the defendant should absolutely be held to the purpose of his agreement. And what he bargained for was sentences within or below the guideline range. And he agreed not to appeal if he received that. And he got two sentences within the guidelines. One was below, based on cooperation, yes. But that's correct. What is unclear and ambiguous in this plea agreement is whether he also bargained away the right to challenge the imposition of a consecutive term, which lengthened the overall aggregate. The agreement doesn't speak to that directly. Correct. But, but, and I think you're quite correct on that. But don't you run into difficulty, though, in the sense that, akin to what Judge Nygaard was asking you, the waiver is plenary, and then there are exceptions or carve-outs from the waiver. Correct. If it were inverted, then your argument that the agreement's silent would seem to be a winning argument. But given that the waiver is plenary, subject to exceptions, don't you have to show us why your case fits within one of those exceptions? Except for the fact that the plea agreement specifically contemplated an intersection of these two cases. So because the cases, and that's what I'm contending renders this waiver ambiguous. That this is typical language that you see in plea agreements when you're dealing with one case that's being negotiated. That this is an unusual situation where the government negotiated two separate deals in the same plea agreement, and raised the question of how they were going to intersect by saying maybe it'll be imposed consecutively, but then saying nothing else about it. And that is where we suggest that that rendered the language of the plea agreement ambiguous, and ambiguities are construed in favor of the defendant. That because nothing, because it was explicitly stated that the intersection of these sentences may result in a consecutive sentence, and that was not further addressed by the stipulations or by the waiver, then that rendered any, it's unclear how we were supposed to advise our client about what his appellate right would have been given the fact that while the government doesn't seem to be pushing for a consecutive sentence because it doesn't say that, it says may. They didn't ask us to agree to any stipulations like the stipulation in page where the defendant explicitly reserved the right to argue for a concurrent sentence. And therefore, the question remains whether or not this falls within the scope of the waiver. Ms. McGrain, do you concede that your position is adverse to what the 7th, the 8th, and the 10th circuits have said in Henry, Morristad, and Hahn? With regard to Henry, the plea agreement in that case challenged not only any appeal of the sentence, but also the manner in which the sentence was determined. So if we're talking about the manner in which the sentence was determined, I think that's a much more specific and broad and would encompass the imposition of a consecutive sentence. And in Hahn, again, the plea agreement contained the language for any manner in which the sentence is imposed in addition to also that included the waiver was not to particular guideline ranges, it was to the statutory maximum. And Morristad specifically exempted or carved out what the defendant could appeal and could not appeal. And it did not include the concurrent or consecutive nature of the sentence. And again, while this plea agreement carved out the guidelines, it also mentioned the intersection of these two sentences negotiated together by the government. And the intersection of those sentences just was not addressed. Thank you. We'll hear you on rebuttal. Thank you. Mr. Morimako? Thank you. Thank you, Your Honors. Glenn Morimako on behalf of the government. Our position is a fairly straightforward one. We believe the language in the plea agreement is plain and unambiguous. And as Judge Hardiman suggested in his questioning, it's a waiver that's plenary. And it's subject to exceptions. There is condition precedence, which I think it's pretty much conceded now that the conditions precedent were met. Both sentences were within the guidelines range or below the guidelines range. The language, again, we believe is clear. It says the sentence imposed. They're trying to challenge the sentence imposed here. It was a consecutive sentence. They hoped it would be concurrent. The judge had discretion, which we concede. And the judge chose to exercise that discretion in the manner he did. But that is part of the sentence imposed. Almost by definition, it seems to me. We do think that- Why is the defense counsel says that the language sentence only refers to the length of the sentence or the sentences in this manner, not consecutive or- There are quite a number of components of what the sentence is. In Perez, this court addressed one that was not addressed in our plea waiver, which in that case was restitution. Again, there's no mention of restitution. But there are quite a number of things that go into the sentence imposed. There are fines. There's restitution. There's special conditions of release. There are the standard conditions of release. There are all sorts of things that go into the final judgment of conviction and sentence. And certainly, I don't know what you would characterize the decision of the court to impose a consecutive or concurrent sentence other than part of the sentence imposed. Again, sometimes they're asked to give credit for time served or not give credit for time served. Again, that's part of the sentencing determination that the court makes in the sentencing hearing. It would be an interesting carve out to suggest that that was not part of the sentence, it seems to me. And I'm just sort of relying on plain language of plain meaning of the language as we understand it. Again, I apologize for it not being in my brief. But in my 28J letter, I did cite U.S. v. Perez to the court, which this court, again, analyzing pretty much identical language from the District of New Jersey in a presidential opinion, held that even though we didn't mention restitution, that that was covered in the agreement. And I think we start to go down a very slippery slope if we start requiring the district to mention all the things that we mean when we say sentence. Because then I do think we get into a situation where it could be construed against us because we mentioned sort of six things, but we left out the seventh thing or the eighth thing or the ninth thing. There are all sorts of things that can go wrong at a sentencing hearing, whether they're procedural or substantive. But I think the thrust of this agreement is that if the guidelines are applied, the defendant has waived his right to appeal. And I think that the clearest way to say that is the way we've done it, which is to say that any sentence cannot be appealed if the conditions precedent are met as they were here. Even though the guidelines are advisory, do we give any weight to the fact that this specific guideline is phrased with a shout? Well, this Court has already held that the shout doesn't mean shall, even prior to Booker. But I think the important point here, which distinguishes this case from Bowman, is that the consecutive or the consecutive or concurrent nature was in fact mentioned in the plea agreement. So certainly the defendant was on notice that that was going to be an issue. And certainly it was one of the fighting points during the hearing. And so it didn't, it shouldn't have really come as a surprise to the defendant. The assumption is, for violations of supervised release, that in fact it will be consecutive sentence as a general rule. And again, the Court had discretion to do differently. Here it basically followed the norm. So the suggestion that we should have had a carve-out for the norm strikes me as putting the burden in the wrong place. Mr. Banks relies on the Second Circuit's decision in Brown and the Sixth Circuit's decision in Bowman. If we rule in your favor, are we creating a split with those circuits? Well, I think the Second Circuit's going to be a problem for us. I think the Sixth Circuit is clearly distinguishable because I do think Bowman turned on the fact that there was no mention of 5G 1.3 in the plea agreement and there was no mention at all of the state sentence. So that was clearly outside the contemplation. I can't really, frankly, distinguish the Second Circuit on that basis. I do think the Second Circuit, some of the cases, there's a line of them. And in some of the cases, the government didn't even fight the plea waiver. But the language is pretty broad in the Second Circuit cases. So I think there's an arguable conflict there. And what's your response to Ms. McGrain's distinctions regarding the Seventh, Eighth, and Tenth Circuit cases? Well, I don't think there's a distinction between 5G 1.3 and 7B, the 5G, the state sentences versus this all being done once in the same federal proceeding. I think, if anything, that's a stronger case for us that, in fact, this was all done in one proceeding. Defendant's more on notice if it's all in one proceeding rather than if there's a prior state sentence. Sure. More on notice because that really is a separate, I mean, there's reason to think that's over, it's done, and it's not within the contemplation of what the court's doing. And especially where 7B 1.3 suggests that the norm is that this will be consecutive, you know, there's less of a suggestion under 5G 1.3. There's a lot more different eventualities of whether something should be concurrent or consecutive. It's not kind of – it's hard to parse. And there are a lot more opportunities for a defendant to get what they're typically seeking. I think her argument, if I understood it completely, was that those cases referred to the manner in which the sentence was imposed. What's your response to that? Well, clearly some of the waivers are written differently. I did see one of them included the language, the manner in which the sentence is imposed. What does that mean in your view? The manner in which the sentence is imposed, I would think, is procedural. Whether the judge yells at the defendant. Well, you can imagine – you can imagine, for example, a judge not granting an adjournment or not allowing a defendant to subpoena documents they wanted a hearing or – So you think it goes to the irregularity – potential irregularity of the sentencing proceeding itself? That – the procedures, I would think it could be anything. It could be a ruling of law. It could be – I mean, it's a broad phrase. I don't know what the parameters of it are, to be perfectly frank with Your Honor. But I think that's why we haven't sort of invoked that language. What we've tried to do is just be as clear as we can and just say the sentence imposed is what you can't appeal if you're sentenced within or below the guideline range. That strikes me as pretty clear. And we're not – we don't have to decide what procedures need or whether, you know, if you made an error of law or if you made an error of judgment or if you abused your discretion or if you, you know, didn't follow a proper procedure. We think it – we want – we intend for this agreement to waive all objections to the sentence if you're sentenced within the guideline range, which clearly happened here. If you had some language the way some of the cases have that says any really means any, would there be any question here? Or is it not necessary? Well, as Judge Nygaard pointed out, the Castro opinion says any means any. And as I recall – I don't want to get this wrong – the Castro – no, it wasn't in New Jersey. It was not in the New Jersey plea agreement. So I can't make that representation. But Castro held the word any means any. And I guess it was the Eastern District's plea agreement. And we certainly stand by that holding of this court. If the court has further questions, I'm happy to be here. I do think we've covered in our brief most of what we intended to say here. So, thank you, Judge. Thank you, Mr. Mormarker. Rebuttal? Just to follow up on some of the questions the court had, I absolutely think if this court issues a published opinion in the same vein as Page and Wyckoff, it does create an absolute split, especially with Stearns in the Second Circuit. That would be taking the exact opposite position that Stearns took. And again, when we're construing the scope of an appellate waiver, the language of the waiver is critical and the circumstances in which the plea agreement is negotiated. And this was an unusual case involving a very extensive cooperation agreement. The defendant cooperated, provided information in 11 cases, which resulted in 9 convictions. And so, it was reasonable for him to expect or at least believe that he was not going to get consecutive time. So, I think that has to be considered when we're determining what the party's reasonable expectations were with regard to this plea agreement. How could that be a reasonable expectation in light of the guidelines? Because this court... I would think it would be reasonable if the guidelines suggested that in this scenario, a consecutive sentence should not be imposed. But that's the opposite of the guidance, right? Absolutely. And so, in a typical case, the expectation would be that you're getting a consecutive sentence unless something really exceptional exists. And in this case, something exceptional did exist. And Swan specifically leaves open the... gives the court great discretion in determining how to run these sentences. Maybe not fully concurrently, but maybe partially concurrently. The government also was suggesting that not only with relation to the underlying bank fraud conspiracy, but also with the violation of supervised release, that the district court should give Mr. Banks consideration for what it termed extraordinary cooperation. So, when it's highly unusual that the government is saying to the court, this is just cooperation outside the norm, and we think you need to give consideration to that. And the court didn't do that with respect to the violation of supervised release. And so, the expectation was, okay, maybe the court wasn't going to give departures on both of them, but might have given partially concurrent time instead of running these consecutively when it all involved the same conduct. And it involved a plea negotiated by the government to resolve two cases where the intersection of those cases was never contemplated. Can you just quickly shed some light on that manner question? I'm not clear as to what that would mean. Our position is that the manner of the sentence imposed is exactly this, the decision to run these sentences consecutively. That's the manner. The sentence imposed is the term of imprisonment, fines, probation, supervised release, conditions of supervised release. Anything else would be the manner of the sentence imposed, that these are the two sentences, 18 months and 33 months, and the manner in which they're going to run is consecutive. If we end up agreeing with you, do we have to find that Mr. Banks was absolutely not on notice that there was the possibility of a consecutive sentence? No, Your Honor. He was on notice, and we don't dispute that. But what we do dispute is that he also understood that by carving out these exceptions for the guideline, making these appeals to the guidelines range, that the exception was not also carved out for the imposition of the consecutive sentence. Thank you. Thank you, Ms. McGrane. The case was very well briefed and argued. The court will take the matter under its own.